The Court of Appeals reversed the judgment of the Provincial Court. !
*377 I. Holly day's note upon the construction of the repealing act.
The act of 1663, reciting and condemning the practice of white women intermarrying with .negroes, by which means also divers suits might arise touching the issue, &c. enacts, that “ whatsoever free-born subject woman should “ intermarry with any slave from and after the last day of “ that Assembly, should serve the master of such slave “ during the life of her husband, and that all the issue of “ such free-born woman so married, should be slaves as “ their fathers were.” -
The act of 1681, reciting the ill use that had sometimes been made of the former act, by masters, &c. of white women procuring such marriages, and that inconveniences might arise by controversies touching the issue of such free-born women, enacts, that if any master, &c. of any free-born English or white woman, should by any instigation, procurement, &g. suffer any such free-born English or white woman to marry a slave, after the last day of that session of Assembly, he should forfeit his title to the services of such woman, and the said woman should be free, &c. A penalty of 10,000lbs. of tobacco is laid upon the master for procuring or suffering such marriage, and the like penalty upon the priest who should marry them, &c. Then follows the repealing clause : “ And be it enacted, “ that one act, entitled, An act concerning negroes and u slaves, be and is hereby utterly repealed and made void, “ provided that all matters and things relating in the said “ act to the marriage of negroes and free-born women and a their issue, are firm and valid according to the true intent “ and purpose of the said act, until this present time of the “ repeal thereof, any thing in this act to the contrary not- “ withstanding.”
In Jenkins, 233. pi. 6. it is laid down as a rule, that where one statute is repealed by another, acts done in the mean time shall stand; but not if a statute be declared *378 null. Cites 4 IT. VII. 10. 10 II. VII. 22. 1 Freenu 26, 27.
In 2 Jo. 19. in argument it is said, “ Where an act of « Parliament makes a thing void, it shall be void to all in- “ tents, and shall have a very violent relation.” Cites 3 H. VII. 15. 4 H. IV. 10. 10 H. VII. 22. Dyer, 227. 377. Fitz. Partition, 2. 1 Freem. 27. The cases cited do not seem to be to the purpose. Dyer, 227. 337.
Fz72<??- has inserted this case out of Jones, and cites Latch. 143. which is the case of stat. 23 II. VI. of sheriff’s bonds, for ease and favour, which statute has no retrospect.
But admit this rule of construction to be true and right as applied to acts of Parliament in England,, yet it may possibly not affect this case. The rules of construction of statutes in England, as settled by the Judges at home, especially where they relate to the construction of particular terms, are very improper guides to the construction of our acts i of Assembly, made so early as this repealing act was. For these rules have been settled upon a presumption that the law-makers were well acquainted with the legal import and effect of the terms they made use of, and that they intended they should have that effect, and no other. For example, when the Legislature repeal an act they have one intent, that is, that the act shall have no future operation, but that mesne acts should be preserved. But when they declare an act null and void, they have' another intent, that is, that the act shall have not only no future operation, but that the mesne acts also shall be destroyed. And they so understand the terms they make use of.
But however right and reasonable this presumption may be when applied to Parliament in England, who for many centuries have been composed of the wisest and ablest men in the kingdom, and where generally, if not always, lawyers of the first abilities in their profession have been found, and where the Judges assist; surely it can hardly be a reasonable presumption, when applied'to a Maryland *379 Assembly so early as tbe year 1681, when there were few lawyers, and perhaps none of considerable ability in the country, and when most probably our Assemblies were composed of men whose attention was chiefly employed in im» proving their plantations and procuring the necessaries of life, and who had neither leisure nor inclination to acquire such a degree of knowledge in the law as this rule of construction supposes.
There is one rule of construction, however, which is universally applicable to all occasions and to all times. Judges are to expound acts of Parliament in such manner as may be agreeable to the intent of the makers. It seems unnecessary to cite cases to evince this rule; it is founded on the highest reason, and its authority is self-evident. Acts of Parliament are nothing else but the declarations of the mind and intention of the supreme legislative authority, concerning what they enjoin or prohibit to be done. The will, the intention, is the law, and the words are the vehicle by which the intention is conveyed and made known to those who are bound by it. The words are the shell, the intention the kernel. Plow. So Ld. Coke. ®ui hceret hi litera hceret in cortice. Can any thing then, be more reasonable than to expound an act of Parliament in such manner as may give it that operation which the makers intended ?
This is the only rational rule by which acts of Assembly made in the early times of the Province, can be expounded. For there is this difference between an English Parliament and a Maryland Assembly in the infancy of the country— They indeed both settle and determine what they "would enjoin and prohibit, and then they reduce their determination to the form of a law, in such terms as they conceive apt to express their intention.- But the Parliament in England understood the legal import of all the terms commonly used in acts of Parliament, and therefore the legal import of the terms they use must be understood to express their meaning. But it cannot be supposed that a Maryland Assembly in 1681 understood the legal import *380 of all the terms used, and therefore it would be a very unsafe rule to judge in all instances of their intention by the legal import of the terms they used. I speak of tech» nical terms.
If the Assembly in 1781 intended by the repeal to destroy mesne acts, and knew that the terms they made use of were proper for that end, to what purpose was the provision added which favours them until the time of the repeal ? This circumstance alone is sufficient to shew that, they did not understand the terms utterly repealed and made void in that extent which is now contended for. If, therefore, upon a consideration of the whole act and comparison of the several parts of it, the intent of the makers can be discovered, that is the rule which must govern the construction of it.
The Assembly no doubt knew that acts had been done and the rights acquired under the law of 1663, and I shall submit that their intent was to confirm those acts and to save those rights. It must be confessed that they intended something by the provision. Now, if they intended that acts done under the law of 1663 should not be valid until the repeal, but null and void, the provision seems altogether useless, for the act of 1663 continued in force until it was repealed, and therefore .all acts done under it must have been valid until that time, and needed not the provision to make them so. It requires very little skill in the law to determine this. Every body knows, that an act done under a law is valid as long as the law exists.
But suppose the Assembly thought otherwise, and intended by the provision to confirm the acts and save the rights under the law of 1663 until the time of the repeal, but no longer, of what use would this be ? Boar mail's ancestor had acquired alright under the law of 1663 ; he had been in the possession and exercise of that i'ight, and had reaped all the fruits of it until 1681. Then to what purpose was it to say that his right should be valid until 1681, if they intended, that after that time it should be null and void? The proviso, upon this construction, gave him *381 nothing more than he had already enjoyed, and therefore was useless and impertinent. The Assembly could not make that never to have existed which had already had its existence. But the Assembly of 1681 knew that rights had been acquired under the law of 1G63, and in the course of so many years as that law subsisted, there might have been instances where these rights had been transferred. They considered them as acquired under a law of the proviso; and though, for reasons that governed them, they thought fit to repeal that law, they thought it would be contrary to public faith to destroy these rights, and therefore intended by this proviso to save them. This it is reasonable to suppose was the intent of the Assembly in 1681, because this intention was agreeable to justice and the public faith of the country. Purchasers might have bought the issue born as slaves, and their issue also might have been devised.
There is some obscurity in the penning of the provision as it stands, but by a very easy transposition of the words they will clearly express the meaning of the makers as we contend for. The clause stands thus, viz. “ Provided, u that all matters and things relating in the said act to the a marriage of negroes and free-born women and their issue, a are firm and valid until this present time of the repeal sc thereof,” &c. Now suppose it be read thus s ££ Provided, that all matters and things relating to the mar- ;£ riage of negroes and free-boni women and their issue until this present time of the repeal, are firm and "valid.” Here is not a word added or omitted, and I submit it that this is the true sense of the provision; as if they had. said that all matters and things done and transacted until the time of the repeal, should be valid. For what wás the true intent and purpose of the act of 1663 ? To make the issue of these unnatural marriages, and their mothers, slaves. How is that intent and purpose answered, if immediately upon the repeal they are manumitted ? Surely if the act of 1681 sets them free, that is directly son *382 trary to the terms of the proviso, that all matters and tilings, &c. are firm and valid according to the time intent and purpose of the act of 1663.
^ ^e8' leave to repeat this observation, because I think it points out a difficulty the counsel on the other side must be involved in upon their construction. The act of 1663 makes the issue slaves as their fathers were. The act of 1681 repeals that act, but has a proviso, that all matters and things, 8s;c. are firm and valid, according to the true intent and purpose, &c. Which intent and purpose was to make slaves of the issue, if immediately upon the repeal they are all to be free.
If this law is to have such a construction as will manumit the issue who were made slaves by the act of 1663, the consequence will be, that it will have the effects of an ex post facto law; for an interest was vested in Mr. Boat— man’s ancestor under the law of 1663, and this act of 1681 will strip him of that interest. I take it that a law which has an ex post facto effect ought to be very clear and explicit in the terms of it, otherwise the Court will not give it such a construction as will defeat rights formerly acquired and well settled. 2 Ld. Raym. 1352. 2 Shoxu. 16.
A saving in an act of Parliament may restrain the pur- ■ view, but not destroy it. W. Jones, 339. Vide stat. 25 Edw. III. c. 1. 10 Mod.. 115.
When a proviso in an act of Parliament is directly contrary to the purview, it shall stand and be a repeal of the purview.
This construction is good in a political point of view. Many of these people, if turned loose, cannot mix with us and become members of society. What may be the effects cannot perhaps be fully pointed out; but as much inconvenience may reasonably be expected, their title to freedom ought to be made out very clearly.
Such construction is to be made as is agreeable to the intention of the Legislature. The stat. Westm. 2 Car. I. says, if a fine be levied of lands, ipso jure sit nullus, but this does not make the fine void, but only works a discon *383 tinuance. Plow. 57. 205. 464. 5 Co. 5. 3 Co. 59. b. No clause, sentence, or word is to be rejected. 1 Show. 108.
Judges have a liberty over laws to mould and construe them to the best convenience. Hob. 346. The whole act is to be taken together. 1 Show. 490. The intention is to prevail in a deed, a fortiori in a statute, which shall be construed as a will. 8 Co. 118, 119. See Co. JLitt. 217. as to transposition of words.
Ex post facto acts are to be construed as much as possible in favour of precedent rights. 2 Ld. Raym. 1351, 1352. 2 Show. 16.
A saving in an act which goes in destruction of the whole purview, is void, but not if it goes to part. W. Jones, 339. 10 Mod. 115. 1 Bl. Com. 89.
The following repealing expressions are used in different acts of Assembly:
By the act for free-schools, made the 8th July, 1694, c. 17. the act made the 21st September, 1690, is utterly repealed and made void.
By the act for the establishment of religious worship, of the 26th March, 1701 — 2, c. 1. the act of 26th April, 1700, is repealed and made void.
By the act for the speedy conveying public letters, &c. of the 14th November, 1713, c. 2. the act 26th March, 1707, is repealed and made null and void.
By the act for'regulating writs of error, &c. of the 14th November, ,1713, c. 4. the act made the 28th October, 1712, is utterly repealed and made void.
By the act for direction of sheriffs in their offices, &c. of the 3d June, 1715, c. 46. the acts of the 26th April, 1704, and 22d October, 1713, is repealed and made void.
By the act of the 3d June, 1715, c. 49. declaring certain laws to be repealed, the laws are declared to be repealed, abrogated, null and void, to all intents and purposes whatever.
By the act for limiting the continuance of actions, made the 5th August, 1721, c. 14. the act of 1718, and that of ■1720, are utterly repealed and made void.
*384 By the act to punish blasphemers, &c. made 26th October, 1723, c. 16. the acts (of 1696, and 1715, are repealed and made void. A proviso not to affect former judgment.
By the act to encourage the destroying of wolves, &c. of the 24th October, 1728, c. 7. all former laws in relation thereto, are repealed, abrogated, and made null and void.
By the act for repealing part of the act against forging or counterfeiting foreign coin, made the 8th August, 1729, c. 2. part of the act of 1704, c. 4. is utterly repealed and made void.
By the act providing what shall be good evidence to prove foreign and other debts, 1729, c. 20. the act of 1715, c. 29. is repealed and abrogated.
By the act for the preservation of the breed of deer, 1730, c, 17. the act of 1729, c. 1. is repealed, abrogated, and made null and void.
By the act of 1732, c. 23. part of the act of 1715, c. 36. for laying a duty on Irish servants, is abrogated and repealed.
By the act of 1735, c. 16. the act of 1704, c. 90. is repealed and abrogated.
By the act of 1763, c. 21. the act of 1715, c. 12. for recovering- small debts before a Justice, is abrogated, repealed, and made void.
By the act of 1751, c. 3. the act of 1713, c, 13. and the supplementary law, are repealed, abrogated, and made ■null and void.
The word repeal only is used in the act of 1715, c. Í4. of 1718, c. 4. 1749, c, 12. 1759, c. 14.
By the act of 1766, c, 5, so much of the act of 1713, c. —. as relates to summoning Juries to the Provincial Court, is repealed and made void.